Q. Let me just ask a question. I'm assuming you have your client at counsel table? A. That's correct, Your Honor. Q. Are we okay with that? A. Generally, we don't have clients sit at counsel table, but the panel has indicated they're okay with it. As long as you understand you're the only one speaking. A. Yes, Your Honor. Q. All right. You can proceed. A. I'd like to reserve seven minutes for... Q. Well, that's aspirational, but good luck on that. A. I would like to... Q. Does anyone want to tell me who you are today? A. Yeah. Q. No one seems to want to tell me who they are. A. Thank you for that. I was about to say that. My name is Jose Luis Fuentes. Q. Thank you. A. I represent Inez Suarez, the appellant who was present in court. And I ask the court's indulgence. I've been covering for my fourth COVID encounter, so memory fog, and also have been a victim of a crime last Monday. Q. Well, are you okay to be here today? A. Yes. Q. Okay. A. I want to address our request for judicial notice in this case. And we've been having state litigation on trying to evict Ms. Suarez from her home. And in there, we finally got documents that we weren't allowed to obtain in the federal court. Q. Okay. On the judicial notice part of it, looking through that, it looks like your client was renting out the house. There's some unlawful detainers that you're asking us to take judicial notice of? A. No. What I wanted – Q. Well, answer my question. Were there some unlawful detainers in there? A. Yeah. Herself. Herself and – Q. So she's trying to kick the people out that were in her house? A. Oh, no, Your Honor. Q. Maybe I didn't understand them. A. Yeah. No. Yachty, the person who bought the house in foreclosure, is now trying to kick out my client from her home. Q. So she's still in there? A. Yes. She's still in there. And the new owner is trying to kick her out. The new owner is the defendant in the federal court, Yachty. And they're claiming they have no responsibility over this. And we've been trying to get discovery to put the pieces together that Yachty has been in on the foreclosure before the foreclosure, not after. They didn't come and buy a property as a bona fide buyer afterwards. No. They've been working with real-time resolution since – and this is what the documents in the state action that we asked for judicial notice since March of 2021. Q. They've been working with him as an agent for collection. Is that right? A. Yes. Q. Yes. And for pursuit of other – A. Correct. And the important part of the request for judicial notice is because the district court judge was presented with arguments that Yachty was not in any relationship with real-time resolution. And that real-time resolution was never the owner. Yachty was never the owner. But the documents in the state court show that they were the owners before the foreclosure. But this was all kept from us because of the rules of the 12B6 motion. We couldn't do discovery. It was just – this was just based on the pleadings. Q. Okay. But even if we take judicial notice, it's not per se evidence. We can take judicial notice, but we can – I don't think we should want to waste a lot of time on the judicial notice. Q. I'm curious. From 2008 until the date of foreclosure, did your client, Ms. Morris, make any payments towards her mortgage? If so, how much and when? And if not, why not? A. Okay. Yes, she made payments to her – on her mortgage to USDA, who is the first and second lien holder. And so she – she paid for the mortgage. Q. For – okay, the line of credit that we're talking about, from 2008 until the date of foreclosure, did she make any payments on that loan? A. No. Q. Okay. And so no, but why not? A. The first part was 2008 was when the banking crisis and she couldn't pay to Countrywide. She was sent a letter saying Countrywide is now who you need to pay. Greenpoint sent her a letter and she couldn't pay Countrywide because they went under, too, and they weren't around. And then they told her to go to Capital One. Capital One, they said, we don't have it. Send her to Wells Fargo. Wells Fargo said, we don't have it. So she couldn't make payments pursuant to the letter she received from her mortgage broker saying pay Countrywide. And Countrywide was out. Q. Do you agree that the mailbox rule applies and that she is legally presumed to have received the notices in September – September 29th of 2012, which notified her of the transfers? Your present servicer is Bank of America, and your new servicer is Real Times Resolutions? A. Yes. Q. So she got those notices? A. Pursuant to the mailbox rule, yes. Q. And you agree she got those notices? A. In my interviews with her, she just doesn't remember them now. Q. Can I ask a question? A. Yes. Q. This is Judge Schroeder. Sorry. The mystery to me is how much did she actually borrow under this letter of credit? A. That's a good question. Prior to filing the lawsuit, we engaged with Real Time Resolution to try to solve that. And what we did was we found all her bank records for the period of 2007-2008, and I submitted them to Real Time so we can figure out what money was put into her account so she can write checks to whoever. And all we found was $30,000 that coincided with Real Time when Greenpoint sent a $10,000 check a day after it showed her account. So we concluded about $30,000. And that money was being, the records show that she was paying that different amounts. Q. When you say we concluded, do you mean we, your side? Did the other side agree that it was $30,000? A. That the record showed? Yes, that the record showed. Because they have no, we want the counsel checks, and that's what we wanted. They don't have those, and I checked with, we initially sued Greenpoint, the initial holder, and we dismissed them because their counsel couldn't find the checks, couldn't give us the checks, and they said we're not the owners anymore. Q. When you say the checks, you're talking about which checks, the checks to her? A. The checks that she would have written and signed to contractors withdrawing from the home equity line. And those checks, they haven't been able to find the initial mortgage holder. Q. So what does that matter? What does that matter? Isn't it whether she was making payments on her home equity? That's the issue. How I spend, if I have a home equity, how I spend it doesn't really matter. It's how I pay it back. So I know going through the foreclosure, she had an opportunity to pay what they said she owed, and she didn't. I don't see anything in the record that says, while this was ongoing, that she put aside any money in an account saying, I don't know who to pay, but I'll make my payments, I'll put them here, so when we figure out who I pay, I've got the money. It looks like basically she just didn't pay any money since 2008, has been living in the house without paying that money, and now wants us to say that we forgive that you didn't pay that money because Bank of America said it was uncollectible and that it would be on your record for five years. So why isn't this just a case where she decided, hey, I can live with a ding to my credit for five years if I don't have to pay this back, but it turns out that someone wanted her to pay it back. So I guess I'm just having a hard time understanding. I'm trying to understand why your client would think that she didn't have to pay anyone from 2008 that would give us legal reason to fine for your client. She didn't owe the money. I get bills, and somebody wants $100,000 from me. Well, let me just make it even more real. I just got a bill for a $750 taxi I took in Mexico. I never took a $750 taxi. My company wants me to pay it, and I'm like, well, I'm not going to pay $750 when I did not take that taxi. This is fraud. Are you saying that she didn't borrow any money under this, take any money out? No. No, she, no, that's not, no. That's not correct. Yeah, and I make that clear in the brief. We're not claiming she took zero, but we're definitely claiming she didn't take $150,000, $270,000. She took at most from what we can find evidence for is $30,000, and she was making payments in the $30,000. So let me interrupt you. Yes. Are you saying that the bank records do not show additional money coming into the account? The bank records from, yes, the bank records don't show additional money than that $30,000 coming in. And this is where she went to her Greenpoint when they were the owners, the original owners, to dispute this. And the bank records from Bank of America show that she called saying, I don't owe this money. And then from then, the whole crisis hits with the banks, and it gets moved to Countrywide. Countrywide goes under. It gets moved to basically Bank of America. Bank of America in 2009 has this astronomical amount that in 2008, she's trying to, with the original owner, say, I don't owe this money. And so this dispute of what the actual money she owes hasn't been resolved, and I tried to resolve it in 2022 when the balloon payment comes due. And when the balloon payment comes due. And guess what I'm asking. I think we're having a difficult time understanding. I know you wanted to reserve time for rebuttal, and I'm thinking it might make sense if you reserve the balance of your time. Let's hear from the other side and how they're framing the issue and saying what I think because the court, I'm hearing from my colleagues, we have some interest in what the records show. So let's see what their perspective is, and then you have the time to respond to that. Does that make sense to you? Yes, Your Honor. Is that okay? Yes.  We'll hear from real time, and I implore of you to tell me who you are today. Of course, Your Honor. May it please the court. My name is Nathaniel Lisi, and I'm here for real time resolutions in YACD LLC. Okay. So if you can, I think you see what the court's struggling with in the questions. We're trying to get the framework of your perspective of what the records show and then give that. With regards, Your Honor, to I think appellant's bank records, I can't tell you exactly what they show. I've seen them, and I can't tell you which entries reflect a payment from this HELOC. And they talk about checks, checks that are written off of this line of credit. That's your own. Okay. At this point, the records, at least from the side of Greenpoint, that my client received as the subservicer, demonstrate that the amount owed on it was, I believe, what was in our brief, which was $150,000 or some amount therein. In other words, you're saying the records reflect a distribution of $150,000 to the appellant. No. Is that correct? That's what our records show. That's what, or I should say, that's what our predecessor's records show. Their records, I can't really speak to that because I've looked at them, and I can't tell whether what's going in and whether that was the only place that it went into. Certainly, what could have happened here, she could have used it as a purchase money loan, which was very common during that time, and that would have not been gone directly into her account. That would have gone somewhere else. That would have gone to whoever she bought the property from. So, yeah. Counsel, I'm not sure I understand. The $150,000, does that represent what your record shows she actually withdrew, or does that include all the interest and everything? No. So, Your Honor, my understanding, that's the withdrawal. That is the withdrawal. And then the amount that's in the notice of default for the foreclosure, that reflects the addition of the interest. And that was how much? I believe that was $270,000. And so what was her line of credit? How much was it for? I believe it was $150,000. Was it $154,000? I remember from the record, when it hit $154,000, there was a notice saying it exceeded. Yeah, somewhere in that $150,000 mark. Okay. So let's hear your perspective of did Realtime ever acquire ownership of the deed of trust? If so, when? And if yes, does Realtime's ownership of the deed of trust bind it to the terms of the home equity line of credit, which I guess you call the HELOC? Why or why not? And also, too, maybe you can, I think they were raising in 2017, what was Realtime's relationship with Greenpoint and Bank of America? So can you give us some background on that from how you're analyzing the case? So, Your Honor, this was a point that I raised in the supplemental brief that I submitted. And what I will say is this. In 2017, there was an assignment of the deed of trust, a corporate assignment of the deed of trust. Within that corporate assignment of the deed of trust, it indicates that there was a purchase agreement for the note that Realtime was the buyer of. I believe that was from Greenpoint to Realtime. Realtime then, it did not hold that note. It sold it to another entity, which is no longer a party to this case. So I think that addresses that issue. With regards to whether that, does it bind Realtime, does it bind Realtime as far as a, it makes them the holder of the note, which makes them a party to the contract. Now, whether that creates liability for whatever occurred in 2008, that I can't speak to. That really is an issue related to the contents of the purchase agreement. Contents of what? Contents of the purchase agreement for that loan. So what about, I think they're claiming something conspiratorial about Yachty here. I don't follow. Did you hear what your friend on the other side said? I did. So what frequently happens with these loans is, or these foreclosures, is you have an entity that is, you have a home that is put up for sale for foreclosure. It doesn't sell. There are no bidders. And what ultimately happens is the entity that was selling it in this case, which I believe was RRA Opportunity Trust, it was purchased by another entity that is associated with Realtime called Yachty LLC. So it was basically a purchase because there were no actual bidders on the property, because no one wanted that property. And that was due in part, of course, here, because there was ongoing litigation and there was a Liz Pendence in place. So what about the judicial notice, that he wants us to take judicial notice of certain things that are happening otherwise? What's your position on that? I don't think this court can take judicial notice of those documents, except to say, well, I should say. Well, we can do what we want. That's true. Certainly. I mean, it doesn't make it evidence in the case. I understand that. But we can, if something's out there in their court records, we can look at them. I could look at them without you asking me to look at them. Of course, Your Honor. I think what I meant to say is that a lot of what is being asked of for judicial notice here is actually just discovery responses, which are not filed with the court. So I don't think that judicial notice would be proper for any of that. With regards to the unlawful detainer action, certainly the pleadings filed with the San Bernardino court would be subject to judicial notice. All right. So as far as you know, Ms. Suarez is still in the house? Yes. And I believe she's renting to other tenants as well. So when I ask the question, she's actually renting it out to someone else? I believe she has tenants in the house. But she's there too? She's living there too. Okay. So I guess if you view it in the worst light towards her, she's not paying you, and then she's having other people pay her in the house? Correct, Your Honor, and she's not been paying us for over a decade, despite being asked to do so by Realtime, by Bank of America. The only basis she has for not paying this is a bank teller in Indio, in the Indio branch of Bank of America, saying that this deed of trust was not enforceable. Well, excuse me. Sure. I mean, it's been a long – I went to law school here in California a very long time ago, 50 years ago approximately. But at that time, the statute of frauds existed. Doesn't it still apply in California? Yes, it does. And as a result, isn't any such oral representation, assuming that it exists, invalid under the statute of frauds? Your Honor, I completely agree with that. I think you hit the nail on the head. There's a claim for promissory estoppel here based on that, but the problem with it is we're not talking about trying to create a contract out of a promise. What we're talking about is taking a written note for a loan and basically extinguishing it with an oral statement from someone we don't even know. That cannot be the law, and the basis for that is the statute of frauds. What is your understanding of what she is suing for now? That's a good question, Your Honor. I will make my best attempt. As far as I understand, she is saying, I didn't take out this money. I only took out $30,000. I didn't take out $150,000 because my bank records say I didn't get that money. Therefore, you cannot foreclose on me. Even though I admit that I am not paying on this loan and I am in default, you still are not allowed to foreclose. That is my understanding of her action at this time. She's saying there's a civil extortion claim? Yes. Are you aware of any authority in California for that? I believe the district court is right that there's a split as to whether that exists. I don't think that in any way it applies here because all we're talking about is a nonjudicial foreclosure. It's not, for example, a statement that will reveal a crime that you committed under extortion. Correct, Your Honor. I think that is maybe a question that you would weigh in on as to whether that cause of action exists under California law, although I don't think the court needs to do that in this case. As Judge Wallace noted, there's a more basic way to eliminate that particular cause of action. Is there any way that she can amend the complaint from your perspective to state a cause of action? I don't believe so, Your Honor. I think the case law that we cited addresses two points. One, this is the third attempt on this. Both myself and my very capable associate have had long conversations and meet and confers with counsel for appellant, and we have tried to explain our position and what the law is on these matters, and what we received was something that brought us here today. I would also add I would agree with the district court's assessment here that it is very difficult to untangle what is being alleged against my clients and what the wrongdoing is. And as stated in, and I can get you the case law if you need it, that too can be a basis for denying leave to amend where the pleadings themselves are so convoluted and unintelligible that it does not appear they can proceed. Well, counsel, let me ask you this. As I understand it, she was suing for breach of contract, among other things, claiming that she didn't get any notice of who she should pay and when she should pay or something like that, and that therefore the foreclosure was wrong. The district court said she didn't have a contract with any of the people that she sued, so she couldn't do that. Isn't that correct, or am I not stating this accurately? No, you are correct, Your Honor. That was certainly part of the district court's ruling. Well, I thought it was a pretty major part, and I'm just wondering who then should she have sued? Who did she have a contract with if she's suing for breach of contract? Well, I think, Your Honor, this was something, the lawsuit should have been brought way back when, in 2008, when she claimed at first that this amount was incorrect. At that point, she would have sued the lender and potentially the servicer, although probably not for breach of contract with the servicer because there would have been no contract between them. And one of the points that the district court did not address and appellant did not address is that the note itself contains terms as to what to do to dispute charges. And it says you need to let the lender know. That's required, and that is based on federal law. And the reason that that is there is so that we don't have a situation like this where 20 years later someone can say, I didn't get that money. It's prejudicial to the lender to leave the lender in the dark for a decade and a half and not raise that issue through the procedure that federal law has set forth as to dispute these charges so that the lender can go in and the lender can investigate it when the facts are fresh and they can determine whether they gave money to someone who was someone other than the borrower. We don't appear to have any additional questions of you. You have 19 seconds or whatever to wrap up if you want. Your Honors, the district court here, to the extent that there was an issue related to who was on the contract, that really doesn't matter here. There are numerous bases for dismissing this complaint. There is no basis for going back and amending it because too much time has passed. So what I would ask of the court is that you affirm the district court's work. What is the best basis for affirming the district court, assuming we don't have to do it on the same grounds the district court did? I think a statute of limitations argument, at least for the breach of contract. I could go through each cause of action, Your Honor, if you'd like me to, as to what I think are the strongest arguments that my clients brought, but I'll leave it to your discretion as to whether you want to hear those. That's all right. All right, thank you. You're most welcome. All right, Mr. Frontes-Roman. You do agree that the statute of frauds bars your oral representation argument about the Bank of America employee, don't you? I'm glad you raised that, Your Honor, and I'll start off. One, I don't have a case site in front of me, and I can provide that afterwards, but I've been briefing this issue on another appeal for the third district state court on the statute of fraud, and I want that statute of fraud, but I can't use it because if in California there's all these exceptions to that statute of fraud and for oral contracts, and if there's been a change in the party's positions based on the oral contract, then the court's inequity are not going to apply the statute of fraud. And I'm like, damn, because as soon as there's been a change in the party's position based on the oral contract, somebody did something pursuant to the oral contract, then you can't use the statute of fraud, which is very clear, and I'm like, okay. So I don't— Don't you have to have proof of that? Pardon me? Don't you have to have cognizable proof of that? I mean, what you have is an unidentified person allegedly making a statement. Sure, change of position can be argued. Well, what we have is Bank of America records showing that there was contact, that she did go talk to somebody. So it's not that she's making it up. It's just there is a record that real-time resolution, when we were before the lawsuit exchanging records, has a printout of that. But, counsel, if I understand—if I understood what the Bank of America employee allegedly said, it was we're in the third position, so we're not going to be able to recover if there's a foreclosure, and so enjoy living in your house. Do you regard that as telling her that she doesn't have to pay anything? No. And, you know, what happened—why that's there, it's just for background information, right? And I'm going to be clear, because we had this with the district court, that this lawsuit is not about 2007, 2008, 2009, 2012. It's about what happened in February of 2022. In February of 2022, a balloon payment came due. That's you pay whatever you owe, or we foreclose. And that's what they acted on. They didn't act on a 2012-13. They acted on a balloon payment of February 2012-2022 in the HELOCs. And they moved—from there, they sent the notices to her. I got involved. We started trying to come up with how much does she owe so she can pay it, conversations that weren't had before. And through all those conversations, I filed a lawsuit once I realized they're not going to come down from $270,000 that she doesn't owe to what she owes. I filed a lawsuit. They foreclosed. I tried to get a stay on that, but that's what we're suing on, the balloon payment of 2022. Any statute of limitations starts running from that date when the contract says you pay. And if you don't pay, consequences. At that date, if they would have said you owe $30,000, she would have paid it. But no, they said you owe $270,000. How do we deny that? Because she says so is in the complaint. She says so. I mean, right now we're at the pleading stage. And in the complaint, she says, I would have done that. She says she's not claiming she owes zero. What she's claiming is she doesn't owe the amount that they're trying to get from her. Has she done a Rule 68 offer? No, because we got kicked out of the 12B-6. We just filed the complaint. They moved for a 12B-6, and we got kicked out immediately because we had prior— So there isn't any proof in the record that she offered to pay $30,000. Besides—oh, no, not $30,000 that she offered to pay. It's in the complaint. It's in the complaint, but there's no actual tender of $30,000. No, they wouldn't—they won't accept it. They won't accept anything less than the full amount. This is why we're here filing a lawsuit, because they won't accept anything minus the full amount that they say is due. And we say we don't know that. What is your best theory as to what is it that you think they owe you and why? My best theory is that we have a trial in this case, and as Honorable Wallach mentioned, we need evidence. We need real evidence that she was given $150,000. That means coming in with documents that are verified, somebody speaking to that. And this is what caused the whole meltdown, if you all remember, in 2007-2008, is that they could not come up with the actual evidence to substantiate these loans. And this is what we have here. It's like, where is the evidence that she took out $150,000? So you're saying, but we're not a discovery court right here. We're an appellate court right here. No, I was just answering to what's my best scenario. My best scenario is that, one, we get reinstated because the district court found that I'm not suing the correct people. As real-time resolution has had to admit, is that they were owners pursuant to the corporate deed of trust that we cited to the district court, but it wasn't read that way, even though it says they're the owners. All right, so you're significantly over time. Let me find out if my colleagues have any additional questions. Judge Schroeder, we do not have any additional questions. Thank you, Your Honor. So the case will now be submitted. Thank you both for your argument here today.
judges: SCHROEDER, CALLAHAN, Wallach